**Charles M. GUSCHKE,**
**Plaintiff-Appellant,**

v.

**CITY OF OKLAHOMA CITY,**
**Defendant-Appellee.**

**No. 83–2599.**

United States Court of Appeals,
Tenth Circuit.

May 28, 1985.

380

Micheal Salem of Rawdon and Salem, Norman, Okl., for plaintiff-appellant.

Page Price Morgan, Asst. Mun. Counselor, Oklahoma City, Okl. (James R. Fuson, Acting Mun. Counselor, Oklahoma City, Okl., with her on brief), for defendant-appellee.

Christopher D. Imlay of Booth & Freret, Washington, D.C., for amicus curiae, American Radio Relay League, Inc.

Before HOLLOWAY, Chief Judge, McKAY, Circuit Judge, and KANE,* District Judge.

KANE, District Judge.

Plaintiff-Appellant commenced this action seeking a declaratory judgment that the Defendant-Appellee city's blanket height zoning restrictions violated his rights under the Constitution and federal statutes. Plaintiff argued that the city's zoning restriction on the height of radio towers located in residential areas was preempted by federal regulation of amateur radio operation, an unconstitutional restraint on interstate commerce, and an unconstitutional restraint on plaintiff's right of free speech. The district court granted the defendant city's motion for summary judgment. We affirm.

I

Pursuant to its zoning authority under Title 11 Okla.Stat. § 43–101 *et seq.*, the City of Oklahoma City, through its City Planning and Zoning Code (adopted October 21, 1980), has established regulations with respect to the heights of buildings and accessory structures. Plaintiff resides in an R–1 single family residential district. The zoning code restricts the height of buildings in this district to thirty-five feet. Additionally, accessory structures in R–1 zones may be no more than fifty feet above the ground.[1]

Plaintiff holds an Amateur Extra Class radio license from the Federal Communications Commission. In pursuit of his hobby as an amateur radio operator, plaintiff sought to construct a radio tower and antennas next to his home, located in north-

---

* The Honorable John L. Kane, Jr., United States District Judge for the District of Colorado, sitting by designation.

1. The Oklahoma City Planning and Zoning Code provides that within an R–1 zone, "[n]o building shall exceed 2½ stories or thirty-five feet in height. § 3200.3(c)(4)(a). Further, § 6300.-

1(H)(3) provides that accessory features such as antennas or towers, "may be erected to a height not exceeding 15 feet above the applicable permitted maximum height for that building or to such greater height as may be provided in these ordinances."

west Oklahoma City. After obtaining the necessary permit for an accessory structure, plaintiff constructed a tower standing 64 feet above the ground. Through the top of the tower he placed a pipe upon which he mounted several antennas for use on frequencies authorized by the FCC. The overall height of the tower and antennal support is 78 feet.

After receiving notice that his accessory structure exceeded the R–1 zone height limitation, plaintiff applied for a permit from the city to allow the 78 foot structure to remain. This application was denied and plaintiff appealed to the Board of Adjustment. His application for a variance was also denied. Plaintiff then instituted this action seeking a declaration that the city's R–1 zone height restriction, limiting the height of his antennal tower, improperly impinged upon and thwarted federal interests relating to the operation of his amateur radio station as well as limiting the manner in which he exercised his right of free speech.

The district court found it was undisputed that plaintiff's ability to transmit and receive radio signals would be impeded by a lower antenna. Plaintiff alleges that the impairment of his use of his radio would be significant. He notes, for example, in his proposed findings of fact filed in the district court that some estimates suggest there is a 4,000 times greater possibility of interference with a 40 foot high antenna than with a 70 foot antenna. Moreover, he suggests that as the height of the tower is decreased, obtaining comparable transmission performance requires increasing transmitter power. This in turn will increase the chance of interference with susceptible home entertainment receivers.[2] Plaintiff's transmissions to the south and southeast, where Hefner Dam is located, are particularly impaired by the lower antenna requirements. Defendant countered that the height limitation impairment on plaintiff's use of his radio is only minor. The district court, however, held that the degree of impairment was not a material fact. The trial court found that, as a matter of law, the city's zoning height restrictions did not tread upon any federally protected interests. The court granted summary judgment for the city.[3]

## II

To supervise radio and wire communication generally, Congress created the Federal Communications Commission. The FCC's mandate provides:

For the purpose of regulating interstate and foreign commerce in communication by wire and radio so as to make available, so far as possible, to all the people of the United States a rapid, efficient, nation-wide and world-wide wire and radio communication service with adequate facilities at reasonable charges, for the purpose of the national defense, for the purpose of promoting safety of life and property through the use of wire and radio communication, and for the purpose of securing a more effective execution of this policy by centralizing authority heretofore granted by law to several agencies and by granting additional authority with respect to interstate and foreign commerce in wire and radio communications, there is created a commission to be known as the 'Federal Communica-

---

2. See generally, Note, *Local Regulation of Amateur Radio Antennae and the Doctrine of Federal Preemption: The Reaches of Federalism*, 9 Pacific L.J. 1041, 1044–1047 (1978).

3. Appellant argues that a trial should be conducted to determine the degree of impairment which exists. This court has consistently provided that summary judgment is a drastic remedy and any relief pursuant to Rule 56, Fed.R. Civ.P. should be applied with care. *Jones v. Nelson*, 484 F.2d 1165, 1168 (10th Cir.1973). The burden is on the moving party to show the absence of a genuine issue of material fact. Pleadings and factual inferences tending to show issues of material fact must be viewed in the light most favorable to the party opposing summary judgment. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157–59, 90 S.Ct. 1598, 1608–1609, 26 L.Ed.2d 142 (1970); *Rea v. Wichita Mortgage Corp.*, 747 F.2d 567, 573 (10th Cir. 1984). We find, however, that even if the limitations on plaintiff's use of his radio are as great as he alleges, federal law does not require overturning the city's zoning ordinances.

tions Commission,' which shall be constituted as hereinafter provided, and which shall execute and enforce the provisions of this chapter.

47 U.S.C. § 151. Included within the ambit of the FCC's regulatory supervision are amateur radio stations, as defined at 47 U.S.C. § 153(q).

The FCC has established the amateur radio service whose basic purpose is defined as:

Section 97.1 Basis and Purpose—The rules and regulations in this part are designed to provide an amateur radio service having a fundamental purpose as expressed in the following principles:

(a) Recognition and enhancement of the value of the amateur service to the public as a voluntary noncommercial communications service, particularly with respect to providing emergency communications.

(b) Continuation and extension of the amateur's proven ability to contribute to the advancement of the radio art.

(c) Encouragement and improvement of the amateur radio service through rules which provide for advancing skills in both the communication and technical phases of the art.

(d) Expansion of the existing reservoir within the amateur radio service of trained operators, technicians and electronics experts.

(e) Continuation and extension of the amateur's unique ability to enhance international good will.

47 C.F.R. § 97.1. Plaintiff looks to these general statements providing for centralized control of radio communications by the FCC and encouragement of radio use as evidence of federal preemption of state zoning height limits as applied to radio towers. With the exception of height limitations designed to avoid interference with air traffic, 47 C.F.R. § 97.45, neither Congress nor the FCC has taken any explicit action concerning the height limitations of amateur radio antennas.

Plaintiff does not dispute the validity of the city's zoning power or that zoning is a valid exercise of the state's police power. *Village of Euclid, Ohio v. Ambler Realty Co.*, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926). Plaintiff, however, contends that the city's powers must give way to broader federal interests. He posits three arguments in support of his request for declaratory relief: one, federal communications statutes and regulations preempt the city's zoning restrictions; two, the zoning ordinance impermissibly interferes with federal control of interstate commerce; and three, the zoning limitations impermissibly interfere with plaintiff's right of free speech.

A

■ As in all matters of statutory construction, preemption, which has roots in the Supremacy Clause, is a matter of congressional intent. Preemption may be express or implied through statutory language, a pervasive regulatory scheme or actual conflict between state and federal law. Federal regulations are equally as preemptive of state law as federal statutes. *Capital Cities Cable, Inc., v. Crisp,* —— U.S. ——, —— — ——, 104 S.Ct. 2694, 2699–2701, 81 L.Ed.2d 580, 588–89 (1984); *Michigan Canners and Freezers Ass'n, Inc. v. Agricultural Marketing and Bargaining Bd.,* —— U.S. ——, 104 S.Ct. 2518, 2523, 81 L.Ed.2d 399 (1984); *Fidelity Federal Sav. & Loan Ass'n v. De La Cuesta,* 458 U.S. 141, 152–154, 102 S.Ct. 3014, 3022–3023, 73 L.Ed.2d 664 (1982). Preemption should not, however, be presumed absent a clear manifestation of federal intent to exclude state law provisions. *Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.,* 450 U.S. 311, 317, 101 S.Ct. 1124, 1130, 67 L.Ed.2d 258 (1981); *Los Alamos School Bd. v. Wugalter,* 557 F.2d 709, 714 (10th Cir.), *cert. denied,* 434 U.S. 968, 98 S.Ct. 512, 54 L.Ed.2d 455 (1977).

■ No explicit statutory or regulatory language preempts the city's zoning height limitations on radio towers. We are not here faced with a case where the FCC has taken explicit action to preempt state law. *See Capital Cities Cable, Inc., su-*

*pra; New York State Commission on Cable Television v. Federal Communications Commission,* 749 F.2d 804 (D.C.Cir. 1984).[4] Plaintiff argues rather, that the general federal encouragement of amateur radio together with the broad federal scheme regulating radio and telecommunications through the FCC suggests preemption. We do not have such a panoramic view of federal law. General statements of legislative or regulatory intent to encourage the use and development of amateur radios are insufficient to imply intent to preempt state laws which inhibit amateur radio development.[5] *See Commonwealth Edison Co. v. Montana,* 453 U.S. 609, 633–636, 101 S.Ct. 2946, 2961–2963, 69 L.Ed.2d 884, *rehearing denied,* 453 U.S. 927, 102 S.Ct. 889, 69 L.Ed.2d 1023 (1981) (General statements supporting the development of coal usage are insufficient to preempt state regulations which inhibit coal consumption). Moreover, the extensive regulatory authority of the FCC, including the responsibility to license amateur radio operators, does not preempt state zoning height limits on radio antennas. *See, e.g., Head v. New Mexico Bd. of Examiners in Optometry,* 374 U.S. 424, 430–432, 83 S.Ct. 1759, 1763–1764, 10 L.Ed.2d 983 (1963) (State prohibition on broadcasting eyeglass prices not preempted by FCC licensing and regulatory authority over radio stations). We, therefore, find that neither federal statutes nor regulations preempt the City of Oklahoma City's zoning regulations concerning radio antennas in residential areas.

### B

Even in the absence of explicit legislation, the Commerce Clause creates an implied limitation on the several states authority to enact laws which restrict interstate commerce. *Arkansas Elec. Co-op Corp. v. Arkansas Public Service Comm'n,* 461 U.S. 375, 389–393, 103 S.Ct. 1905, 1915–1917, 76 L.Ed.2d 1 (1983); *Hughes v. Oklahoma,* 441 U.S. 322, 99 S.Ct. 1727, 60 L.Ed.2d 250 (1979). States are not, however, prohibited from regulating matters of legitimate local concern, such as zoning, even though such regulation may affect interstate commerce. *Lewis v. BT Inv. Managers, Inc.,* 447 U.S. 27, 36, 100 S.Ct. 2009, 2015, 64 L.Ed.2d 702 (1980); *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970). When the facts are viewed in the light most favorable to the plaintiff, the defendant's zoning restraint on the height of radio towers has only incidental impact on interstate commerce. Conversely, the state's interest in zoning is great. The height restrictions are not, in either purpose or effect, a protectionist measure. *See City of Philadelphia v. New Jersey,* 437 U.S. 617, 624, 98 S.Ct. 2531, 2535, 57

---

**4.** In *Earth Satellite Communications, Inc.,* 95 FCC 2d 1223, *recon. denied,* FCC 84–206, *aff'd sub. nom., New York State Commission on Cable Television, supra,* the FCC took specific action preempting a state's attempt to regulate satellite master antenna television systems. Similarly in a proposed rule making the FCC provides:

> State and local zoning or other regulations that discriminate against satellite receive-only antennas in favor of other communications facilities are preempted unless they have a direct and tangible relationship to reasonable, valid, demonstrable and clearly articulated health, safety or aesthetic objectives and constitute the least restrictive method available to accomplish such objectives.

Preemption of Local Zoning Regulations of Receive-Only Satellite Earth Stations, Notice of Proposed Rule Making, 50 Fed.Reg. 13986 (1985). In the proposed rule making the FCC noted that the American Radio Relay League had requested a ruling preempting zoning regulation of amateur radio towers. The FCC declined to consolidate the League's request with the ruling on receive-only satellite earth stations. *Id.* at n. 1. Had the FCC taken specific action to preempt zoning control of amateur radio antennas, our inquiry would be whether such action was within the FCC's authority and exercised reasonably. *New York State Commission on Cable Television,* 749 F.2d at 808. The FCC, however, has taken no action concerning local regulation of amateur radio antennas. Our inquiry, thus, deals with the more preliminary question whether the Congress and the FCC have attempted to preempt local regulation. We find that they have not.

**5.** It is undisputed that amateur radio plays an important societal function. *See* H.Conf.Rep. No. 765, 97th Cong., 2d Sess., *reprinted in* 1982 U.S.Code Cong & Ad.News 2237, 2262–2263. Federal recognition of this function, however, is insufficient to preempt local regulation.

L.Ed.2d 475 (1978). Accordingly, we find that federal interest in the free flow of interstate commerce does not preclude the city's zoning height limitations as applied to amateur radio towers.

### III

 Plaintiff argues that by interfering with his ability to use his radio, the city restricts plaintiff's right of speech. Further, he suggests that as an amateur radio operator his broadcasts are afforded greater First Amendment protection than those of commercial radio stations. This attempted reliance on *Metromedia, Inc. v. San Diego*, 453 U.S. 490, 511–521, 101 S.Ct. 2882, 2894–2900, 69 L.Ed.2d 800 (1981), is misplaced. The contrast in *Metromedia* between advertising and non-commercial speech does not carry over to a comparison of for profit and not for profit broadcasting. The broadcasts of for profit radio stations consist of more than commercial speech, which is "expression related solely to the economic interests of the speaker and its audience." *Central Hudson Gas & Electric Corp. v. Public Serv. Comm'n of New York*, 447 U.S. 557, 561, 100 S.Ct. 2343, 2349, 65 L.Ed.2d 341 (1980). An acceptable zoning limit on a commercial radio station, which, for example, broadcasts news and opinion, would also be applicable to an amateur radio user. Plaintiff's communications are no more entitled to First Amendment protection than the public commentary of others who receive remuneration for their reporting.

Two points undermine plaintiff's claim. First, plaintiff possesses no constitutional right to unrestricted access to communicate over radio frequencies. Within constitutional limits, for example, speech over the airwaves is constrained by the licensing and regulatory restraints of the FCC. *Red Lion Broadcasting v. Federal Communications Comm'n*, 395 U.S. 367, 386–401, 89 S.Ct. 1794, 1804–1812, 23 L.Ed.2d 371 (1969). Second, the city's zoning limitations do not impinge upon the content of plaintiff's speech, nor do they prohibit his communication as an amateur radio operator. The zoning regulations place reasonable restrictions on the place and manner of plaintiff's communication. Such restrictions are consistent with First Amendment protections. *Cox v. New Hampshire*, 312 U.S. 569, 575–76, 61 S.Ct. 762, 765–66, 83 L.Ed. 1049 (1941). Zoning regulations are a permissible means for restricting certain types of speech to certain locales within a city. *See Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 62–63, 96 S.Ct. 2440, 2448–49, 49 L.Ed.2d 310 (1976).

Thus, the vast majority of courts and commentators considering this problem have recognized that zoning regulation of radio antenna height is a matter of local concern which is not prohibited by federal constitutional or statutory provisions.[6] We see no reason to deviate from this established position.

AFFIRMED.

---

**6.** Although not controlling, a number of other courts have upheld zoning height limitations on radio antennas. *Schroeder v. Municipal Court of Los Cerritos*, 141 Cal.Rptr. 85, 73 Cal.App.3d 841 (1977), *appeal dismissed*, 435 U.S. 990, 98 S.Ct. 1641, 56 L.Ed.2d 81 (1978) (Forty foot height restriction on radio towers located in residential areas is valid); *Kroeger v. Stahl*, 248 F.2d 121 (3d Cir.1957) (zoning prohibition on construction of 75 foot commercial zoning tower in residential area upheld); *Presnell v. Leslie*, 3 N.Y.2d 384, 165 N.Y.S.2d 488, 144 N.E.2d 381 (1957) (prohibition of 44 foot tower in residentially zoned area upheld); *State Ex Rel. Bd. of Comm'rs of North Bergen Tp. v. WOR–TV Tower*, 39 N.J.Super. 583, 121 A.2d 764, 767 (1956) (Although 760 foot tower held not to be a nuisance, FCC license did not prohibit court from finding tower to be nuisance); *Sleeper v. Old King's Highway Regional Dist. Comm'n*, 11 Mass.App. 571, 417 N.E.2d 987 (1981) (denial of permit to construct 68 foot tower in historic district upheld); and *Fairwood Homes Ass'n v. Pierce*, 578 S.W.2d 343 (Mo.App.1979) (restrictive covenants limiting height of antennas to no more than 5 feet above the roof of any structure upheld). *See also* Note, *State regulation of Radio & Television*, 73 Harv.L.Rev. 386, 395 (1959). *But, c.f.*, *Oelkers v. City of Placentia*, slip op., No. CV78–1801–RMt (C.D.Cal.1980) (Radio height limits restrict free speech); Note, *supra* note 2.